In the Matter of ALBERT L. WILBUR, an Attorney, Respondent.

First Department, February 14, 1930.

*Isidor J. Kresel* of counsel [*Bernard Herschkopf* with him on the brief], for the petitioners.

*Hartwell Cabell* of counsel [*Cabell, Ignatius & Lown,* attorneys], for the respondent.

DOWLING, P. J. The respondent was admitted to practice as an attorney and counselor at law in the State of New York at a term of the Appellate Division of the Supreme Court of the State of New York, Fourth Department, in July, 1906.

The respondent is charged with misconduct as an attorney at law, as follows:

Prior to February 1, 1928, in a number of instances when insurance companies negotiated settlements direct with the parents of infants claiming damages for personal injuries suffered by them by reason of the alleged negligence of persons insured against such damages by said companies, the respondent was retained and employed by said companies to act as attorney for said parents and infants and to bring suits in their behalf against the persons insured as aforesaid. The respondent commenced said actions and thereafter applied to the courts in which they were pending for orders authorizing the settlement of the claims made therein for amounts previously agreed upon between the said companies and the parents of said infants and in support of said applications the respondent submitted to the courts affidavits verified by him in which he stated and alleged, in substance, that he had examined the facts and circumstances surrounding the happening of the accidents in which the infants were injured and that, in his opinion, upon the trials of said actions the plaintiffs in all probability would not obtain any more money than was offered by the insurance companies in the proposed settlements and that in his opinion it was for the best interests of the parties interested that the said offers be accepted and that he joined in applying for orders authorizing the plaintiffs in said actions to accept the offers previously made by said insurance companies. The only examinations or investigations of the facts and circumstances surrounding the accident referred to in said affidavits ever made by the respondent consisted of examinations of the files of the said insurance companies, and the opinions expressed by the respondent in said affidavits regarding the amounts which probably would be recovered upon trials of the said actions were based upon said examinations. The respondent did not know the infants who had been injured or their parents and had never met them or consulted with them prior to the time that he verified and submitted said affidavits to the court. The respondent submitted said affidavits to the court knowing that the court relied upon the statements made therein in determining whether or not the settlements offered should be authorized and accepted. The respondent did not properly or adequately examine the facts or circumstances surrounding the happening of the accidents in which the said infants were injured

before he verified and submitted the said affidavits to the courts and the statements made therein regarding such examinations and the conclusions based thereon were misleading. The respondent in failing to properly examine or investigate the facts and circumstances surrounding the accidents in which said infants were injured and in verifying and submitting the said affidavits to the courts without making proper or adequate examinations and investigations of the facts and circumstances surrounding the happening of said accidents and the nature and extent of the injuries suffered by said infants neglected and failed to properly protect their interests while acting as their attorney.

Following respondent's appearance and answer, the matter was referred by this court to a referee, to take testimony in regard to said charges and report the same with his opinion thereon. The learned referee has duly reported and the petitioners now move for such action as this court may deem proper.

It appears that soon after his admission to the bar and in the autumn of 1906, respondent came to New York city and entered the office of James L. Quackenbush, now general attorney and counsel for the Interborough Rapid Transit Company, where he still is. His progress and growth in that office have been, as the referee said, "meritorious and steady." Beginning in 1927 he commenced to handle for certain insurance companies certain proceedings commonly referred to as "friendly suits," regulated by rule 294 of the Rules of Civil Practice and rule 22 of the Surrogate's Court of New York county. Such proceedings grow out of a situation as follows: When any person under twenty-one years of age has been injured and the parents, who have not engaged an attorney, desire to settle the claim for damages out of court, without suit with the insurance company representing the person liable for the injury, it is necessary under the law, before a valid release may be given, to obtain the approval of the settlement by the court, and legal papers leading to an order allowing compromise have to be drawn. Under these circumstances it is the practice of the insurance company to obtain an attorney for the parents to draw these papers and do this work; his fee is paid by the insurance company and does not come out of the settlement which has been agreed upon before he is "retained." Respondent did this work for five insurance companies, for a stated compensation per case. Proof was offered of twenty-eight such proceedings in which respondent acted as attorney for the "plaintiff." The papers usually drawn by respondent are as follows:

1. Petition and order for appointment of guardian *ad litem.*
2. Application for bond, and bond.
3. Summons.

4. Petition and order allowing compromise. The petition being verified by the parent or guardian and containing statements by the parent showing the amount offered in settlement, and that he is willing to accept the same, the manner in which the accident happened according to his knowledge or information, and whether or not the child has returned to school, etc.

5. Respondent's affidavit, as attorney, stating the information required by rule 294 of the Rules of Civil Practice, namely, that he had been retained by the petitioner (or plaintiff) at the suggestion of the insurance company for the purpose of carrying out the settlement referred to in the petition, and that his fee was to be paid, not out of the settlement, but by the insurance company, and that he had no part in negotiating the settlement.

6. The exhibits; usually the physician's affidavit or certificate, statements of witnesses, copy of police or hospital record.

In 1921 rule 294 of the Rules of Civil Practice was adopted. This reads as follows:

" Rule 294. Application to compromise infants' claims. On any application for the approval by the court of a settlement of a cause of action belonging to an infant, the court shall require the attorney so applying to disclose his relation to the defendant, and whether he has become concerned in the application or its subject-matter at the instance of such defendant, or has received or is to receive any compensation from such defendant and the amount thereof, or has had any part in negotiating such settlement; and thereupon, if the court or judge deem it necessary, a full examination may be had into all the facts regarding the reasonableness and propriety of such settlement."

Prior to the adoption of this rule there was no regulation concerning the compromise of infants' claims for damages for injuries, except the general provisions of section 474 of the Judiciary Law (as amd. by Laws of 1912, chap. 229), which regulated compromises whenever attorneys had made contracts with the guardians of infants. But there was and still is in force, in the Surrogate's Court, New York county, rule XXII (on which rule 294 of the Rules of Civil Practice was based) which reads as follows: " Upon application for leave to compromise it should appear by the affidavit of petitioner's attorney that he has investigated the subject-matter of the compromise or the facts of any alleged cause of action whether or not the attorney has become concerned in the application or its subject-matter at the instance of the party with whom the compromise is proposed or at the instance of any representative of such party."

The form of affidavit used by respondent in these proceedings is as follows:

" STATE OF NEW YORK, ⎱ ss.
County of New York. ⎰

" Albert L. Wilbur, being duly sworn, says:

" I am an attorney and counselor at law. My office is at 15 Park Row, New York City. I have been retained by the . . . . . . . . . . .herein, at the suggestion of. . . . . . . . . . .a liability insurance company which insures. . . . . . . . . . .for the purpose of carrying out the settlement referred to in the annexed ·petition, which settlement was agreed upon between the said. . . . . . . . . . . and the insurance company prior to the time of my being retained. I am to receive no part of the above-mentioned settlement, but my fee, amounting to $. . . . . . . ., is to be paid by the above-mentioned insurance company.

" I have examined the facts and circumstances surrounding the happening of the accident, and it is my opinion that upon the trial of this action the plaintiff in all probability would not obtain any more money than is offered by the insurance company in settlement herein, and it is my opinion that it is for the best interests of the parties herein that the said offer be accepted, and I, therefore, respectfully join in the said application."

The last paragraph of the affidavit is apparently designed to meet the requirements of the Surrogate's Court rule. It was not necessary under the Civil Practice rule above set forth.

Of the twenty-eight proceedings in which proof of respondent's participation was offered, seven developed after the hearings conducted before Mr. Justice WASSERVOGEL in the " Ambulance Chasing Investigation." In these seven the affidavit of respondent stated that his examination of the facts and circumstances was based upon the insurance company's files. This was done to meet what was thought to be the objection of the petitioners. It is interesting to note that in these seven proceedings the order granting leave to compromise was signed without any question by the court, as was the practice theretofore.

Respondent's testimony is frankly to the effect that the only examination of the facts surrounding the accident made by him was an examination of the files of the insurance company. From this examination he satisfied himself as to the adequacy of the settlement. He made no investigation to ascertain whether the company's files were complete, and made no effort to get any information from the plaintiff's side. He testified that he had not in every case seen the infant or the parent.

No proof appears that in any case the amount of settlement was inadequate. No parent or claimant is shown to have been dissatisfied with the amount of settlement. No litigant has com-

plained about the conduct of respondent. The force of the complaint of the petitioners herein is directed to the statements in respondent's form affidavit, *first*, that he had been " retained " by the plaintiff, and, *second*, that he had examined the facts surrounding the accident and that it was his opinion that the plaintiff could have no larger recovery than the proposed settlement, and that the settlement was for the infant's interest. The petitioners contend also that it was improper for the respondent to have the guardian swear that he had had the advice of counsel.

The practice of attorneys appearing in these " friendly suits " under circumstances similar to those set forth herein has heretofore been brought to the attention of the committees having to do with ethics of two of the lawyers' associations in this department. Neither committee condemned it.

We have carefully considered the situation presented by this record. The relation of attorney and client here depicted is not the ordinary relation. In fact, it was nothing more than a " paper " relation. No special trust or confidence was reposed in respondent by any infant or parent for whom he appeared as attorney of record. No dependence was placed upon his advice. The occasion for retaining a lawyer was explained to the parent by the adjuster of the insurance company. Respondent came into the situation after the compromise agreement was arrived at, and no one relied upon him to protect the interest of the injured.

Respondent's relation to the parties was adequately set out in his own affidavit. The situation was made clear. No one was deceived. In view of the statement as to respondent's retention at the suggestion of the insurance company, and the further statement that his fee was to be paid by such insurance company, we doubt that any court was swayed by respondent's expression of opinion. The form of the compromise order helped focus the attention of the court upon the relationship of the parties. In the ordinary compromise proceeding the court fixes the amount of the attorney's fees and space is left therefor in the order. In the " friendly suit " proceedings the order shows that the attorney's fee is not to be deducted from the amount of the settlement, but is to be paid by the insurance company. With this situation before it the court could, if it so desired, direct an independent investigation. Respondent's participation in these proceedings was part of the mechanics of a technical compliance with the rule. We do not approve of such procedure but we find it no censurable offense.

The charges should be dismissed.

MERRELL, FINCH, McAVOY and PROSKAUER, JJ., concur.

Proceedings dismissed.