In the Matter of Rose Helen Paders, an Attorney, Respondent.

Second Department, March 19, 1937.

*Charles J. W. Meisel,* for the petitioners.

*Herman S. Bachrach* [*Helen Goldstein* with him on the brief], for the respondent.

PER CURIAM. Respondent was admitted to the practice of the law on October 10, 1928. The charges are:

(1) Soliciting negligence cases through certain persons and paying a consideration to them therefor.

(2) Acceptance of retainers in negligence cases under the following circumstances: A casualty company had insured bus lines against liability for accidents. When a collision occurred between the assured of the casualty company and other vehicles, respondent accepted retainers for the purpose of bringing actions against the owners of the vehicles other than the assured in order to divert liability from the assured, and failed properly to safeguard the interests of her clients.

(3) Respondent represented infants in negligence actions at the request of the said casualty company in order to enable that company to make settlements, without first having made independent investigations.

The official referee has recommended that the charges be dismissed.

Shortly before her admission to the bar, respondent was married to one Halpern. She was admitted under the name of Rose Paders Halpern, but has been practicing under her maiden name. Halpern was secretary of a casualty company which has since gone out of business. The casualty company insured a corporation operating buses against accident liability. Upon the happening of an accident involving the assured of the casualty company, the person insured, or his representative, was brought to the office of the casualty company, where he met respondent's husband. That person was convinced that the assured was not responsible for the accident, and was either given a small sum, stated to be " nuisance value," or nothing at all. He was advised, however, that he had a claim against the third party whose vehicle had been in collision with the vehicle of the assured. He was then sometimes sent to respondent, who was retained by him. There were at least one hundred of such cases. The proof justifies the inference that in some cases the retainer was signed at the office of the casualty company and sometimes the client did not see his attorney at all where settlements were made by the third party. The respondent accepted these retainers without really considering the possibility of liability on the part of the casualty company's assured. She generally made no investigation of these cases. Whatever investigation she did make was through her husband and other employees of the casualty company. In some cases she would issue a summons on a report from her husband without seeing the client. She says that she took this course because she assumed there was no liability

on the part of the casualty company's assured. That she shared the profits of these transactions with her husband may be inferred. There can be no doubt that these cases were sent to respondent by her husband as a means of evading liability of the casualty company's assured. Respondent had tried cases for the casualty company, and had represented it in making infants' settlements. While she was acting for these third parties, she was really the attorney for the casualty company. She was serving two masters with possible conflicting interests. In one case, where certain persons were sent to her under circumstances as indicated, other persons involved in the same accident received substantial damages against the casualty company's assured. The proof shows that the persons who came to respondent in most cases were not seriously injured, and were satisfied with the results. However, it is clear that respondent was indifferent to the possible claim of her clients against the casualty company's assured.

As the wife of an officer of the casualty company, and as one who represented it from time to time, it was highly improper for her to take a retainer from any one who had an interest which did or might conflict with that of the casualty company. She has been guilty of a gross breach of duty as an attorney, for which she must be disciplined. It is likely that she was badly influenced by men of experience in this " negligence business." The court, therefore, limits the discipline to a suspension for one year.

The learned official referee made reference only to the fact that the husband had referred cases to the wife, in which he could find no impropriety. He completely overlooked the relationship that respondent bore to the casualty company and the effect of that relationship upon the acceptance of retainers from persons who had or might have had adverse interests.

Respondent represented the casualty company in the settlement of infants' claims against the assured of that company, despite the admonition of the Appellate Division for the First Department (*Matter of Wilbur*, 228 App. Div. 197, decided Feb. 1930) that the practice is disapproved. It seems, however, that this practice has continued in various courts under the belief that rule 294 of the Rules of Civil Practice authorized it. The rule was framed for the purpose of advising the court of any interest that might conflict with that of the infant, and was not intended to encourage the practice. It should be discontinued. Under the circumstances, that charge must be dismissed.

The motion of the respondent should be denied, the motion of the petitioners granted, and the respondent suspended from the practice of the law for a period of one year.

Present — LAZANSKY, P. J., CARSWELL, JOHNSTON, ADEL and CLOSE, JJ.

Motion of respondent to confirm the report of the official referee denied.

Motion of petitioners to set aside the report granted, and the respondent suspended from the practice of the law for a period of one year.